UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIMONE SHANNON AND KATRINE SHANNON )<br>    Plaintiffs )<br>)<br>v. )<br>)<br>THE BARBERINO BROTHERS, INCORPORATED; )<br>JOHN DOE I; JOHN DOE II; AND JOHN DOE III )<br>    Defendants )<br>_____) | CIVIL ACTION<br><br>JURY TRIAL DEMANDED<br><br><br>JANUARY 29, 2013 | |

## COMPLAINT

1. This is a suit brought by consumers under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.,* the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, and the Credit Repair Organizations Act ("CROA") 15 U.S.C. §§ 1679 *et. seq.* against The Barberino Brothers, Incorporated ("Barberino"), a car dealership that falsely and fraudulently submitted Plaintiffs' credit information to various lenders for the purpose of obtaining financing for the sale of a Vehicle.  Plaintiffs also assert pendent state law claims against Hoffman and Nissan for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.,* and against Barberino for false and deceptive advertising practices and for its improper use of Plaintiffs' credit information.

2. Plaintiff Katrine Shannon ("Katrine") is a consumer residing in East Hartford, Connecticut, is the mother of Plaintiff Simone Shannon, and is a "consumer" as that term is defined in 15 U.S.C. §1679a(1), § 1681a(c), and a "person" as defined by 15 U.S.C. § 1691a(f).

1

3. Plaintiff Simone Shannon ("Simone") is a consumer residing in Hartford, Connecticut, is the daughter of Plaintiff Katrine Shannon, and is a "consumer" as that term is defined in 15 U.S.C. §§ 1679a(1) and 1681a(c); an "applicant" as that term is defined in 15 U.S.C. § 1691a(b) and a "person" as defined by 15 U.S.C. § 1691a(f).

4. Defendant Barberino is a Connecticut corporation that operates a motor vehicle dealership in Wallingford, Connecticut.  It is an authorized dealership for Nissan and is a "creditor" as that term is defined in 15 U.S.C. § 1691a(e); a "person" as that term is defined in 15 U.S.C. §§ 1691a(f) and 1681a(b), and is a "credit repair organization" as that term is defined in 15 U.S.C. § 1679a(3).

5. Defendants John Doe I, John Doe II, and John Doe III are employees and/or authorized agent of defendant Barberino whose identity is known to Barberino but is not known to Plaintiffs.

6. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1691e, 15 U.S.C. § 1679h, 15 U.S.C. §1681p, 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

7. This Court has jurisdiction over Defendants because they are located in Connecticut and regularly do business in Connecticut.

8. Venue in this Court is proper, because the transaction alleged herein occurred in this state.

9. In or around April 2012, Plaintiff Simone viewed Barberino television advertisements that encouraged consumers to visit Barberino to purchase a new or used Vehicle.

10. In an attempt to induce consumers to visit Barberino, the advertisement represented that Barberino guaranteed approval for auto financing loans.

11. Induced by the promises of guaranteed credit approval in these advertisements, Simone visited Barberino on or around April 25, 2012.

12. Barberino is located approximately 40 minutes from Simone's home in Hartford, and, because Simone did not have a vehicle, she asked a family friend to drive her to the dealership, and she provided him with $20 for gas money.

13. Upon arriving at the dealership, Simone met with Ryan Marks ("Marks"), a Barberino sales representative.

14. Simone and Marks met at a desk to discuss financing options, and Marks asked Simone whether she could obtain a co-signer.

15. Simone spoke with Katrine by telephone, and Katrine indicated that she would be willing to co-sign for the car.

16. Simone handed her cell phone to Marks, who solicited her name, address, social security number and employment information.

17. Less than 10 minutes after that conversation, Katrine called back and told Marks that she had changed her mind and she did not want to co-sign for the Vehicle.

18. Marks did not utilize the credit information that had previously been given to him by Katrine prior to the time that she informed him that she did not wish to co-sign for the Vehicle.  During that entire time, Simone and Marks were still sitting at a desk with no computer, and Marks had not yet given Katrine's credit information to anyone for submission to potential creditors.

19. Upon hearing that Katrine was no longer consenting to co-sign for the Vehicle, Marks became angry.   Marks contacted Katrine at least two more times that day in an attempt to change her mind.

20. When Katrine indicated that she would not change her mind, Marks told Simone that he would look into the matter and see what he could do to get her approved. At this time, he solicited a $100 deposit from Simone, and she left the dealership.

21. At or around this time John Doe I, John Doe II and John Doe III submitted Simone's credit application to third party lenders without Katrine's co-signer information and it was denied, or, alternatively, Barberino denied Simone's credit application when it declined to consider her credit application without the inclusion of Katrine as a co-signer.

22. The following day, Barberino began contacting Katrine by telephone in an attempt to persuade her to change her mind about her decision not to co-sign for the loan. At first, Barberino contacted Katrine at her personal number, then it began telephoning her at her place of employment. Barberino contacted Katrine 3-4 times a day for several days.

23. Katrine became frustrated by the repeated contacts from Barberino, creating tensions between Plaintiffs. Katrine contacted Simone and asked her to stop Barberino from contacting her further. Following this conversation, Simone called Marks and asked that Barberino stop contacting her and Katrine.

24. Around this time, John Doe I, John Doe II and John Doe III submitted Katrine's social security number to creditors without her consent.

25. Following this conversation, Marks contacted Katrine and left a message indicating that her credit application had been approved.

26. Upon receiving the message, Katrine realized that Marks had not listened to her request not to be a co-signer for the Vehicle. She told Marks that she had not needed approval for anything because she already had a car. Marks continued to attempt to persuade her to cosign for the Vehicle.

27. Following this conversation Katrine contacted Barberino and asked to speak with the owner. She was connected with a male who identified himself as the Vice President, and she explained the situation and her desire not to be contacted by Barberino further.

28. Following this conversation, Katrine received two more calls from Barberino, encouraging her to come in and complete the transaction.

29. Also around this time, Katrine received at least 12 adverse action notifications from various banks and finance companies indicating that her credit had not been approved.

30. On information and belief, Barberino sent Nissan Motor Acceptance Corp. ("NMAC"), and perhaps other prospective lenders, one or more credit applications under Simone's name with Katrine's social security number. Barberino also submitted other false information in Simone's name to NMAC and perhaps other potential creditors.

31. Barberino and/or its authorized agents; John Doe I, John Doe II and John Doe III, willfully submitted false credit information regarding Plaintiffs for the purpose of obtaining financing for the Vehicle.

32. Barberino never provided Simone with a written statement that her credit application had been denied or any statement indicating the reason(s) for any alleged denial of her credit application.

33. Adverse action was taken on Simone's credit application when it was denied by third party lenders or when Barberino declined to consider Simone's credit application without the inclusion of Katrine as a co-signer.

34. This adverse action was taken prior to the time that Simone indicated that she no longer wished to purchase the Vehicle from Barberino, which action was taken by Simone as a direct consequence of its improper submission of credit application in Katrine's name and its continued harassment of Katrine.

35. By its failure to provide Simone with a written notification of the adverse action taken on her credit application, and by its failure to provide Simone with a statement of reasons for any alleged denial or a statement disclosing Simone's right to a statement of reasons for any alleged denial, Barberino violated ECOA § 1691(d).

36. For Barberino's violations of ECOA, Plaintiffs are entitled to actual damages, punitive damages, plus attorney's fees and costs.

37. Barberino violated the FCRA, 15 U.S.C. § 1681(f), when it used or obtained Katrine's consumer report without authorization.

38. For Barberino's willful violations of the FCRA, Plaintiff Katrine is entitled to actual damages, punitive damages, plus attorney's fees and costs pursuant to 15 U.S.C. 1681n, and for Barberino's negligent violations of the FCRA, Plaintiffs are entitled to actual damages and attorney's fees pursuant to 15 U.S.C. 1691*o*.

39. Through submission of false credit information to NMAC and other entities to whom it was applying for credit on Plaintiffs' behalf, Barberino, John Doe I, John Doe II and John Doe III violated CROA, 15 U.S.C. § 1679b(a).

40. For Defendants' violations of CROA, Plaintiffs are entitled to actual damages, punitive damages, plus attorney's fees and costs pursuant to 15 U.S.C. 1679g.

41. Through its false and deceptive advertisements representing that credit approval was guaranteed regardless of credit history, its subsequent rejection of Simone's credit application with a co-signer or its failure to consider her application without a co-signer, and its subsequent representations that Simone could not be approved without a co-signer, Barberino engaged in unfair and deceptive acts in violation of CUTPA.

42. As a result of Barberino's false and deceptive advertising, Simone suffered ascertainable losses, including, but not limited to the gas money she paid to her friend in order to get to Barberino, as well as temporary deprivation of her $100 deposit.

43. By submitting Katrine's social security number and other credit information to financing companies without her consent, Barberino, John Doe I, John Doe II and John Doe III engaged in unfair and deceptive practices in violation of CUTPA.

44. As a result of the above-described conduct of the Defendants, Katrine suffered ascertainable losses, including, but not limited to, a diminished credit score.

45. For Barberino's violations of CUTPA, Plaintiffs are entitled to their damages, plus punitive damages and a reasonable attorney's fee.

**Wherefore, Plaintiffs claim**, actual money damages pursuant to 15 U.S.C. §1691e(a), punitive damages of $10,000 pursuant to 15 U.S.C. §1691e(b), and attorney's fees and costs of this action pursuant to 15 U.S.C. §1691e(d); actual money damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) and attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3); actual money damages pursuant to 15 U.S.C. § 1679g(a)(1), punitive damages pursuant to 15 U.S.C. § 1679g(a)(2)(A), and attorney's fees and costs pursuant to 15 U.S.C. § 1679g(a)(3); statutory punitive damages pursuant to C.G.S. § 42-110g(a); attorney's fees pursuant to C.G.S. § 42-110g(d); an order from the Court ordering Barberino to cease and desist from engaging in unfair and deceptive trade practices;  and such other further relief to which Plaintiffs are, at law, or in equity and by statute, entitled to against Barberino.

**PLAINTIFFS, SIMONE SHANNON AND KATRINE SHANNON**

By: /s/Daniel S. Blinn_____
    Daniel S. Blinn, ct02188
    dblinn@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax (860) 571-7457